# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

JOSE EDUARDO LOPEZ,          :

     Petitioner,             :

vs.                   : CIVIL ACTION NO. 11-0457-CG-C

UNITED STATES OF AMERICA,   : CRIMINAL ACTION NO. 06-0062-CG

     Respondent.

## REPORT AND RECOMMENDATION

Petitioner, Jose Eduardo Lopez, has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 75). This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Following consideration of all relevant pleadings in this case, it is recommended that Lopez's § 2255 motion be dismissed as time-barred pursuant to 28 U.S.C. § 2255(f).

## FACTUAL BACKGROUND

On September 20, 2006, Lopez entered a counseled guilty plea to Count 1 of the indictment, charging the offense of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846. (*Compare* Doc. 63, Guilty Plea Transcript *with* Doc. 1.) Lopez was assisted by an interpreter during the course of his guilty plea. (*See* Doc. 63, at 3.) Through the interpreter, Lopez acknowledged that he

had received a copy of the indictment, discussed the charges pending against him with his attorney, and understood the charges pending against him; that he was satisfied with the counsel, representation, and advice given by his attorney; that he signed the plea agreement and factual resume after discussing both with his attorney; that the plea agreement contained all agreements he had with the government and that no one had made any different promises or assurances to him to get him to plead guilty; that he understood the plea agreement was only a recommendation as to disposition and that the Court could reject the recommendation and impose a more severe sentence; that no one had attempted to force him to plead guilty and he was pleading guilty of his own free will because he was guilty; that he recognized he was pleading guilty to a felony offense which could deprive him of valuable civil rights and that if he was not a citizen of the United States he could be deported; that he understood the maximum possible penalty was a minimum mandatory term of 10 years to life imprisonment; that he and his attorney had spoken about the federal sentencing guidelines; that he understood the Court would not be able to determine the advisory guidelines sentencing range for his case until after a presentence report had been completed and each side had an opportunity to object to the facts in the report; that he understood the Court's guidelines-range determination could be different from any estimate his attorney or anyone else had given him; that he understood once the guidelines range had been determined, it could be adjusted upward or downward in certain circumstances; that he understood that while the Court had to consider the guidelines in determining the

sentence, since those guidelines are merely advisory they would not necessarily control the sentence imposed; that he understood under certain circumstances he or the government could appeal the sentence impose but that in light of the appeal waiver in his plea agreement he could only appeal it if the punishment imposed was in excess of the statutory maximum, the sentence imposed constituted an upward departure, or if he had a claim of ineffective assistance of counsel; that he understood he had the right to plead not guilty and go to trial with all the rights attendant thereto; that he understood if he went to trial and did not testify that fact could not be used against him; and that he understood by pleading guilty there would be no trial and he would not benefit from the rights associated with a trial. (*See id.* at 8-18.) Thereafter, the following occurred:

THE COURT: Mr. Lopez, you are pleading guilty to a charge of violating Title 21, United States Code, Section 846. And in order to convict you of that offense, the United States would have to prove that two or more persons in some way or manner came to a mutual understanding to either distribute methamphetamine or to possess with intent to distribute methamphetamine, and that you, knowing the object of that plan, willfully became a member of the conspiracy. Do you understand what the government would have to prove in order to convict you –

(There was a loud popping noise on the telephone.)

THE COURT: --of that offense?

DEFENDANT LOPEZ: Si.

.          .          .

THE COURT:        All right. Now, I have asked each of you if you have signed the factual resume attached to your plea agreement and each of you said that you have signed it, and I want to make sure that you understand that by signing that document you are agreeing that the government could prove the facts set forth in the offense conduct section of that document in order to support your guilty plea. Do you understand that and agree to it? Mr. Lopez?

DEFENDANT LOPEZ:        Si.

THE CLERK: Your Honor, I believe we've lost the connection with the interpreter.

THE COURT:        Have we lost the interpreter?

MR. JEFF REINERT:        We did. So we need to reconnect, if we can.

THE COURT:        Okay.

MR. JEFF REINERT:        Can we take just a second and do that?

THE COURT:        Mr. Lopez has continued to answer my questions, so—

DEFENDANT LOPEZ:        Si.

MR. BYRD:        And I think that he understood your question.

THE COURT:        All right. Were you able to understand me?

DEFENDANT LOPEZ:        Si, yes.

MR. JEFF REINERT:        The interpreter called me and told me.

THE COURT:        I heard something pop when I was speaking, so maybe that was it.

.        .        .

MR. JEFF REINERT:        Excuse me, Judge. May I approach?

THE COURT:		Come on up.

(Clerk Reinert attempted to reestablish the telephone connection with the interpreter.)

THE COURT:		Let me continue. We are almost finished with you two. And Mr. Lopez, let me know if you don't understand what I'm saying or if you need the interpreter to finish.

MR. BYRD:	We can do that, Your Honor.

THE COURT:		Okay. So having read your factual resumes, I find that there is a factual basis for each guilty plea and so I now ask each of you how do you plead to the charge, guilty or not guilty?

MR. BYRD:	Tell her.

DEFENDANT LOPEZ:		Guilty.

.			.			.

THE COURT:		All right. It is the finding of the Court in the case of United States versus Jose Eduardo Lopez and in the case of United States versus Lawanda T. Williams, and in the case of United States versus Aaron Michael McClure that each defendant is fully competent and able to enter an informed plea, that each defendant is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. The plea is therefore accepted and each defendant is now adjudged guilty of that offense.

.			.			.

THE COURT:		Mr. Lopez, did you understand sufficiently?

DEFENDANT LOPEZ:		Si.

(*Id*. at 18-19, 21-22, 22-23 & 25-26.)

Lopez was sentenced, on February 1, 2007, to 235 months imprisonment. (*See* Doc. 64, at 19.) Final judgment was entered on February 6, 2007 committing Lopez to the custody of the United States Bureau of Prisons for a term of 235 months as to Count 1 of the indictment. (Doc. 50.)

It is at this procedural juncture that Lopez's case becomes a bit tortured. The undersigned, therefore, turns to the background section the Eleventh Circuit's opinion in *United States v. Lopez*, 562 F.3d 1309 (2009), to explain this history:

> The ten-day period for filing a notice of appeal expired on February 21, 2007. Fed.R.App.P. 4(b)(1)(A). The 30-day period for extending the time to file a notice of appeal expired on March 23, 2007. Fed.R.App.P. 4(b)(4). On April 9, 2007, the clerk of the district court received and docketed Lopez's *pro se* "Motion for Appeal," dated March 29, 2007. The district court construed Lopez's motion as a motion for an extension of time in which to file a notice of appeal and granted that motion on April 30, 2007.

> On May 17, 2007, this Court *sua sponte* dismissed Lopez's appeal for lack of jurisdiction. Because Lopez was incarcerated at the time of his "Motion for Appeal," this Court deemed that motion filed on March 29, 2007. Fed.R.App.P. 4(c)(1); *Houston v. Lack*, 487 U.S. 266, 276, 108 S.Ct. 2379, 2385, 101 L.Ed.2d 245 (1988). This Court ruled that Lopez's notice of appeal was untimely and that the district court "was without jurisdiction" to grant Lopez's construed motion to file an out-of-time appeal because Rule 4(b)(4) allowed the district court, upon a finding of excusable neglect or good cause, to extend the time for Lopez to file a notice of appeal by no more than 30 days from the deadline of February 21, 2007. Fed.R.App.P. 4(b)(4); *United States v. Ward*, 696 F.2d 1315, 1317-18 (11th Cir. 1983). Lopez filed a motion for reconsideration and argued that his notice of appeal should have been construed as a motion to vacate because it asserted claims of ineffective assistance of counsel, 28 U.S.C. § 2255, and that his case should be remanded to the district court. This Court denied Lopez's motion for reconsideration.

The Supreme Court later granted Lopez's petition for a writ of certiorari. *Lopez*, ___ U.S. ___, 128 S.Ct. 806, 169 L.Ed.2d 605. The Supreme Court vacated our order of dismissal and remanded "for further consideration in light of *Bowles v. Russell*, 551 U.S. 205, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007)." *Id.* On remand from the Supreme Court, this Court issued to the parties jurisdictional questions about the time limits in Rule 4(b). Lopez and the United States then responded to the jurisdictional questions.

*Id.* at 1310-1311. On remand, the Eleventh Circuit agreed "with Lopez and the United States that the time limits for a criminal defendant under Rule 4(b) are not jurisdictional because they are not based on a federal statute[,]" *id.* at 1310; *see also id.* at 1311 & 1313; however, the appellate court nonetheless agreed with the government that Lopez's appeal was due to be dismissed as untimely. *Id.* at 1314 ("Because the government has not forfeited its objection to Lopez's untimely notice of appeal, we must apply the time limits of Rule 4(b). . . . Rule 4(b)(4) permitted the district court, upon a finding of excusable neglect or good cause, to extend the time for Lopez to file a notice of appeal by no more than 30 days from the deadline of February 21, 2007. . . . That period ended on March 23, 2007, but Lopez did not even file his "Motion for Appeal" until March 29, 2007. At that late date, the district court, even upon a finding of excusable neglect or good cause, was not permitted to grant Lopez's untimely motion. . . . Lopez's appeal is DISMISSED."). The Eleventh Circuit's opinion dismissing Lopez's appeal was issued as mandate on May 28, 2009. (*See* Doc. 74.)

Lopez filed the instant motion to vacate, pursuant to 28 U.S.C. § 2255, on August 4, 2011. (*See* Doc. 75 (Lopez's verification that he was placing his motion in the prison

mail system on August 4, 2011).) Therein, petitioner raises the following claims: (1)

"Defense counsel [i.e., appointed appellate counsel] rendered ineffective assistance in

failing to notify Movant of the 11th Circuit's decision dated March 25, 2009, more than

one year after the 90 days had elapsed for Movant to file a petition for certiorari to the

U.S. Supreme Court, thereby depriving Movant of his right to file a petition [] for writ

of certiorari[;]" and (2) "Defense counsel rendered ineffective assistance in failing to

object to going forward with the guilty plea after the defendant lost the services of the

interpreter in the middle of the Rule 11 colloquy, rendering the guilty plea not knowing

and voluntary (including the waivers) and resulting in a violation of Movant's due

process rights." (*Id.* at 4A & 4C.) Lopez addressed the applicability of the one-year

statute of limitations period in the following manner:

> Although the judgment of conviction became final more than one
> year ago, Movant was notified of the 11th Circuit's decision by appellate
> counsel on August 12, 2010, as evidenced by the postmark on the
> envelope from Attorney Madden enclosing the 11th Circuit's decision
> without a cover letter, in response to numerous calls and letters from
> Movant. This § 2255 motion is filed within one year of Movant's notice
> from Attorney Madden of the 11th Circuit's decision. As more fully set
> forth in the Grounds for Relief, appellate counsel rendered ineffective
> assistance in failing to notify movant of the 11th Circuit's decision, which
> prevented him from timely filing a petition for certiorari to the U.S.
> Supreme Court.

(*Id.* at 7.)

The United States filed a motion to dismiss on September 29, 2011 arguing

therein that petitioner's "motion is time-barred with no basis for equitable tolling[.]"

(Doc. 77, at 1; *see also id.* at 1-6.) Petitioner filed his reply to the government's motion to

dismiss on October 26, 2011. (Doc. 78.)

Movant avers that appellate counsel failed to timely notify Movant of the 11th Circuit's decision which "started the clock" on Movant's time for filing a petition for certiorari to the U.S. Supreme Court. Noting that Movant does not speak English, is unschooled in the law, and is incarcerated, Movant avers that he exercised due diligence in attempting to gain information on the status of his appeal from his attorney, who utterly and completely breached his duty to notify Movant of the status of his appeal. Throughout 2009 and early 2010, Movant attempted to call the office of appellate counsel Madden on a monthly basis to get an update on the status of his appeal, and even though Movant was not calling collect and was prepaying for the call, counsel's office refused to accept Movant's calls seeking an update on the status of his appeal.

Movant wrote to Attorney Madden on July 8, 2010 requesting a status update, but he received no answer. Movant again wrote to Attorney Madden on August 7, 2010, again requesting an update on the status of his appeal and this time threatening to file a bar complaint in the event Attorney Madden did not respond.

Five days later, on August 12, 2010, Attorney Madden mailed a copy of the 11th Circuit's decision dated March 25, 2009 as evidenced by the postmark on the envelope attached to the § 2255 motion. . . .

Attorney Madden's failure to timely inform Movant of the 11th Circuit's decision in his case caused him to miss the deadline for filing a petition for certiorari review in the U.S. Supreme Court.

Movant filed his § 2255 motion within one year of being notified of the appellate court decision.

.       .       .

Although the granting of a petition for certiorari review by the U.S. Supreme Court is discretionary, and that defendants have no Sixth Amendment right to counsel in pursuit of discretionary review, the appellate courts have "previously granted § 2255 relief on claims that appellate counsel failed to advise a defendant of his ability to seek

certiorari review from the Supreme Court." <u>U.S. v. Johnson</u>, 308
Fed.Appx. 768, 769 (5th Cir. 2009); <u>Lacaze v. U.S.</u>, 457 F.2d 1075, 1076 (5th
Cir. 1972).

. . . In cases where appellate counsel does not promptly notify the
client of the appellate decision and advise the client in writing of the right
to seek further review, which is precisely the situation in the instant case,
the appropriate remedy is to vacate the original judgment and mandate
and reenter it, thereby renewing the 90-day period to petition for certiorari
review. <u>Johnson</u>, 308 Fed.Appx. at 769; <u>Lacaze</u>, 457 F.2d [at] 1076 [].

Movant had 90 days from March 25, 2009 to petition the Supreme
Court for certiorari review. See S.Ct.R. 13(1). Because Movant was not
notified until over a year later, he is entitled to have the 11th Circuit's
judgment and mandate reissued, thereby renewing the 90-day period for
petitioning the Supreme Court. This is not a remedy, however, that the
district court has the authority to grant. Thus, the appropriate remedy
here is to grant Movant a certificate of appealability on the question of
whether he is entitled to have the 11th Circuit's judgment and mandate in
his case withdrawn and reissued thereby renewing the 90 day period to
petition the Supreme Court for certiorari review.

The § 2255 one year statute of limitations may be equitably [tolled]
"when a movant untimely files because of extraordinary circumstances"
and when those circumstances "are both beyond his control and
unavoidable even with diligence." <u>Akins v. U.S.</u>, 204 F.3d 1086, 1089 (11th
Cir. 2000). Movant has averred, under oath, that throughout 2009 and
early 2010, he called Madden's office on a monthly basis and wrote him on
July 8, 2010 and August 7, 2010 (and on several prior occasions but
Movant does not have copies of those prior letters), and Movant submits
that he has established the basis for equitable tolling and an evidentiary
hearing on the issue.

(*Id*. at 1-2, 2-3 & 3-4.)

## CONCLUSIONS OF LAW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was

enacted on April 24, 1996 and, pertinent to this case, added a new subdivision to 28

U.S.C. § 2255 providing for a one-year period of limitations within which federal prisoners must file their motions to vacate pursuant to 28 U.S.C. § 2255. *Akins v. United States*, 204 F.3d 1086, 1089 (11th Cir.), *cert. denied,* 531 U.S. 971, 121 S.Ct. 410, 148 L.Ed.2d 316 (2000).

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Subsections (2), (3), and (4) of § 2255(f) clearly do not apply to petitioner's case and, therefore, the timeliness of Lopez's motion must be calculated under § 2255(f)(1) based upon the date on which his conviction became final. In this case, the Eleventh Circuit dismissed petitioner's appeal as untimely on March 25, 2009, and since Lopez did not file a petition for writ of certiorari in the Supreme Court, his conviction became final ninety (90) days later, on June 23, 2009, that is, the date on which the time for filing

a petition for certiorari expired. *Clay v. United States*, 537 U.S. 522, 524-525 & 532, 123 S.Ct. 1072, 1075 & 1079, 155 L.Ed.2d 88 (2003) ("This case concerns the starting date for the one-year limitation. It presents a narrow but recurring question on which courts of appeals have divided: When a defendant in a federal prosecution takes an unsuccessful direct appeal from a judgment of conviction, but does not next petition for a writ of certiorari from this Court, does the judgment become 'final' for postconviction relief purposes (1) when the appellate court issues its mandate affirming the conviction, or, instead, (2) on the date, ***ordinarily 69 days later***, when the time for filing a petition for certiorari expires? In accordance with this Court's consistent understanding of finality in the context of collateral review, and the weight of lower court authority, we reject the issuance of the appellate court mandate as the triggering date. For the purpose of starting the clock on § 2255's one-year limitation period, ***we hold, a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction.*** In 1997, petitioner Erick Cornell Clay was convicted of arson and distribution of cocaine base in the United States District Court for the Northern District of Indiana. ***On November 23, 1998, the Court of Appeals for the Seventh Circuit affirmed his convictions. The court's mandate issued on December 15, 1998. . . . The time in which he could have petitioned for certiorari expired on February 22, 1999, 90 days after entry of the Court of Appeals' judgment, see this Court's Rule 13(1), and 69 days after the issuance of the appellate court's mandate.*** . . . We hold that, for federal criminal defendants who do not file a

12

petition for certiorari with this Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires." (emphasis supplied)); *see also Stewart v. United States*, 646 F.3d 856, 857 (11th Cir. 2011) ("We dismissed his direct appeal on February 6, 2003, based on an appeal-waiver provision in his plea agreement. Stewart did not seek *certiorari* review of that dismissal, rendering his judgment final on May 7, 2003."); *Close v. United States*, 336 F.3d 1283, 1285 (11th Cir. 2003) ("'The time to file a petition for writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate.'"). Thus, Lopez's one-year limitations period for filing his § 2255 motion began running on June 23, 2009 and expired on June 23, 2010. Because Lopez admittedly did not file the instant motion to vacate until August 4, 2011, some thirteen and one-half months following the expiration of his one-year limitations period, the only arguable means by which this Court can proceed further in its analysis is by finding that petitioner is entitled to equitable tolling of AEDPA's one-year limitations period.

Recently, in *Holland v. Florida*, 560 U.S. __, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), the Supreme Court held, for the first time, that "§ 2244(d) is subject to equitable tolling in appropriate cases[,]" *id.* at __, 130 S.Ct. at 2560, and reiterated "that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at __, 130 S.Ct. at 2562. In the Eleventh Circuit, in the § 2255 context, "'[t]he statute of limitations can be equitably tolled where a petitioner untimely

files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" *Kicklighter v. United States*, 281 Fed.Appx. 926, 930 (11th Cir. June 17, 2008), quoting *Outler v. United States*, 485 F.3d 1273, 1280 (11th Cir. 2008); *see also Foley v. United States*, 420 Fed.Appx. 941, 942 (11th Cir. April 1, 2011) ("We have explained that equitable tolling 'is available only if a [prisoner] establishes *both* extraordinary circumstances and due diligence.'"); *see Diaz v. Secretary for the Dept. of Corrections*, 362 F.3d 698, 700-701 (11th Cir. 2004) ("Equitable tolling is to be applied when '"extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition.' . . . Thus, the petitioner must show both extraordinary circumstances and due diligence in order to be entitled to equitable tolling."); *Steed v. Head,* 219 F.3d 1298, 1300 (11th Cir. 2000) ("Section 2244 is a statute of limitations, not a jurisdictional bar. Therefore, it permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'"). The Eleventh Circuit has noted time and again that "[e]quitable tolling of the limitations period for a motion to vacate is an 'extraordinary remedy' that is to be applied sparingly, and the burden for establishing eligibility for equitable tolling falls squarely on the prisoner." *Foley, supra,* 420 Fed.Appx. at 942 (citation omitted); *see also Johnson v. United States*, 340 F.3d 1219, 1226 (11th Cir. 2003) ("We have emphasized [] that equitable tolling applies only in truly extraordinary circumstances. . . . Appellant bears the burden of establishing that he is entitled to this extraordinary relief."), *aff'd,* 544 U.S. 295, 125 S.Ct. 1571, 161 L.Ed.2d 542

(2005); *Jones v. United States*, 304 F.3d 1035, 1039-1040 (11th Cir. 2002) ("The *petitioner* has the burden of proving entitlement to equitable tolling by showing that 'extraordinary circumstances that were both beyond his control and unavoidable even with diligence' prevented filing the petition on time.").

The Supreme Court in *Holland* indicated that "[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence[,]" *id.* at __, 130 S.Ct. at 2565, and gave the following guidance with respect to "extraordinary circumstances":

> We have previously held that "a garden variety claim of excusable neglect," such as a simple "miscalculation" that leads a lawyer to miss a filing deadline, does not warrant equitable tolling. But the case before us does not involve, and we are not considering, a "garden variety claim" of attorney negligence. Rather, the facts of this case present far more serious instances of attorney misconduct. And, as we have said, although the circumstances of a case must be "extraordinary" before equitable tolling can be applied, we hold that such circumstances are not limited to those that satisfy the test that the Court of Appeals used in this case.

> The record facts that we have set forth in Part I of this opinion suggest that this case may well be an "extraordinary" instance in which petitioner's attorney's conduct constituted far more than "garden variety" or "excusable neglect." To be sure, Collins failed to file Holland's petition on time and appears to have been unaware of the date on which the limitations period expired-two facts that, alone, might suggest simple negligence. But, in these circumstances, the record facts we have elucidated suggest that the failure amounted to more: Here, Collins failed to file Holland's federal petition on time despite Holland's many letters that repeatedly emphasized the importance of his doing so. Collins apparently did not do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules. Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information. And Collins failed to

communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.

*Id.* at __, 130 S.Ct. at 2564.

In this case, petitioner has not established that the instant habeas corpus petition was timely filed nor has he established that extraordinary circumstances and due diligence counsel equitable tolling of the limitations period. *See Spottsville v. Terry*, 476 F.3d 1241, 1245 (11th Cir. 2007) ("'The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner[.]'"); *Johnson, supra,* 340 F.3d at 1226. Petitioner makes no argument that he was ignorant of the one-year limitations period (*see* Doc. 16).[1] Rather, what Lopez argues is that he did not know about the Eleventh Circuit's dismissal of his appeal as untimely until August 12, 2010, several months after his one-year limitations period expired, and because he filed his petition within one year of his receipt of the Eleventh Circuit's opinion dismissing his appeal, this Court should equitably toll the running of the limitations period until his receipt of the appellate court's decision on August 12, 2010. In support of his argument, Lopez

---

[1]    In truth, such an argument would not serve as a basis to equitably toll the limitations period. *Gardner v. Walker*, 2005 WL 1127137, *1 (M.D. Ga. May 7, 2005) ("'Ignorance of the law is no excuse; it is not a reason for equitable tolling.' . . . Here, Petitioner's Objection is without merit because his ignorance of AEDPA's limitations period fails to amount to 'extraordinary circumstance[s]' for equitable tolling purposes."); *see also Burton v. Deloach,* 2008 WL 2131398, *2 (M.D. Ala. Mar. 13, 2008) ("The law is well settled that an inmate's lack of legal knowledge, his failure to understand legal principles and/or the inability to recognize potential claims for relief at an earlier juncture do not constitute extraordinary circumstances sufficient to warrant equitable tolling of the limitation period."), *report & recommendation adopted by* 2008 WL 2131395 (M.D. Ala. May 20, 2008); *see Teel v. Farrell*, 2006 WL 1148817, *4 (M.D. Ala. Apr. 28, 2006) ("[A]n inmate's status as a pro se litigant does not warrant equitable tolling.").

states that "[t]hroughout 2009 and early 2010, [he] attempted to call the office of appellate counsel Madden on a monthly basis to get an update on the status of his appeal . . . [but] counsel's office refused to accept [his] calls." (Doc. 78, at 1 & 2.) In addition, Lopez contends that he wrote Madden on July 8, 2010 requesting a status update on his appeal but got no response. (*Id*. at 2.) This lack of response prompted him to again write Madden on August 7, 2010 requesting a status update and, finally, in response to this letter Madden responded, on August 12, 2010, by sending him a copy of the Eleventh Circuit's March 25, 2009 decision. (*Id*.)

The undersigned finds, however, that Lopez's arguments cannot carry his burden of entitlement to equitable tolling as they do not reflect that the circumstances surrounding his appeal were both beyond his control and unavoidable even with diligence. His vague and conclusory statement (made through a writ writer) that throughout 2009 and early 2010 he tried to call his appellate attorney once each month to get a status of his appeal but was thwarted in his efforts by his attorney's failure to accept his calls simply does not establish due (that is, reasonable) diligence because of the infrequency of his attempts and his admitted failure to correspond with his attorney (or this Court or the Eleventh Circuit) during this virtually 18-month period to ferret out the status of his appeal.[2] That Lopez knew he could correspond with this Court (and

---

[2] Because of this noted lack of due diligence, the undersigned need not consider the specific actions Lopez took in July and August of 2010, when he wrote his attorney requesting the status of his appeal, since by this time his one-year limitations period had already expired.

the Eleventh Circuit) about the status of his appeal is clear from his correspondence with this Court on April 25, 2007, advising that he wanted to "get on" with his direct appeal and desired the appointment of counsel. (Doc. 55.)[3] In light of these facts, the undersigned concludes that nothing other than petitioner's own lack of due diligence is responsible for the untimeliness of the filing of the instant petition. This is simply not one of those rare cases in which principles of equitable tolling can save petitioner from AEDPA's one-year limitations period.[4]

---

[3]     In addition, Lopez actually filed a "Motion for Appeal" on March 29, 2007. (Doc. 51; *see id.* at 1-2 ("Immediately after his sentencing this defendant instructed his counsel, Jim Bird (sic), to appeal the conviction because he believed then and still believes that there are good grounds for appeal. [] Defendant has heard nothing from the appeal and is not aware that any appeal has been made despite his instructions to counsel to do so. . . . [T]he defendant asks this court to appoint counsel on appeal, and if the appeal was not filed by counsel of record, . . . to allow the filing of the appeal at this time.").)

[4]     As to Lopez's direct complaint against appellate counsel (*see* Doc. 75, at 4A-4C), the undersigned simply notes that a criminal defendant has no constitutional right to counsel to pursue discretionary review, *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987), and, therefore, an attorney's "performance cannot be deemed constitutionally deficient for a failure to petition the Supreme Court for certiorari review." *United States v. Fernandez*, 397 Fed.Appx. 433, 436 (10th Cir. Sept. 1, 2010) (citations omitted), *cert. denied*, ___ U.S. ___, 131 S.Ct. 808, 178 L.Ed.2d 540 (2010). Thus, a movant like Lopez "has no viable claim that his Sixth Amendment right to effective assistance of counsel was violated[] . . . [and] no relief is available to [him] under § 2255[.]" *United States v. Moreno*, 2009 WL 676660, *8 (S.D. Tex. Mar. 11, 2009), *report and recommendation adopted by* 2009 WL 2407190 (S.D. Tex. Aug. 3, 2009); *see also id.* ("While Moreno had a statutory right to continued representation of appointed counsel for purposes of filing a petition for writ of certiorari, that statutory right is not the same as a constitutional right which would entitle Moreno to relief under § 2255.").

Moreover, petitioner's claim that trial counsel was ineffective in failing to seek a recess of his guilty plea proceeding when the services of the interpreter were lost simply has no merit. The guilty plea proceeding was all but over when the interruption in the telephone connection occurred; all essential matters related to the guilty plea colloquy (including the elements of the offense) were fully explained to Lopez through use of the interpreter. Moreover, on more than one occasion following loss of the interpreter's services, Lopez indicated he fully understood
(Continued)

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied in its entirety on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000). Given the applicability of the one-year limitations period in this case, a reasonable jurist could not conclude that this Court is in error for failing to reach the merits of petitioner's claims, nor could a reasonable jurist conclude that petitioner should be allowed to proceed further with respect to these

---

Judge Granade's questions and/or comments. Accordingly, the movant has shown neither deficient performance or that the result of his guilty plea proceeding would have been different had counsel requested a recess in his guilty plea proceeding.

claims. *Slack, supra,* 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Accordingly, petitioner is not entitled to a certificate of appealability.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *See, e.g., Brightwell v. Patterson,* CA 11-00165-WS-C, Doc. 14 (order from Eleventh Circuit denying petitioner a certificate of appealability in a case in which this exact procedure was outlined in the report and recommendation); *Griffin v. DeRosa,* 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge recommends that the instant motion to vacate (Doc. 75) be dismissed as time-barred pursuant to 28 U.S.C. § 2255(f). Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 18th day of November, 2011.

  s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection.*  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[5] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded).*  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[5]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).